Call the next case, Dollar Tree Stores v. Workers' Compensation Commission, 4080630. Counsel, please. Okay, please, the court, on behalf of the employer Dollar Tree. This case involves a Dollar Tree assistant manager who on August 9, 2005, was assaulted by a co-worker. She suffered physical and emotional injuries as a result of this. The case was tried on April 12, 2007, before arbitrator Falcioni, who determined that the assault arose out of the employment and awarded TTD. It awarded medical benefits and awarded prospective medical as well. It's the employer's position that the facts in this case are undisputed. Therefore, the standard of review... How are they undisputed? Isn't there an issue over what happened to the money? Does everybody agree as to what happened with the money? Well, there's no dispute relative to the facts surrounding the disappearance of the money. The question of who took the money is based on inferences made on the facts. But the facts themselves aren't in dispute. In other words, we know from the employee that she has almost no recollection of the events that led up to her beating. We know from the employee that she was placed in the backseat of the car. We know from the employee that she heard whoever assaulted her enter the car. I'm only asking the question. You said the facts are undisputed. What are you suggesting the standard of review is here? De novo. Couldn't different inference be drawn from those facts? A reasonable inference shouldn't be drawn from those facts. The only reasonable inference is someone other than the co-worker took the money. That's the only reasonable inference that can be drawn. Can't draw a reasonable inference that the co-worker took the money? No, I don't believe that you can. The question is not whether the co-worker took the money in terms of reasonable inference. And that, I don't believe, enters into the standard of review. Now we're into the inference portion. Determining whether the inference was reasonable is the essence of this case. And what we're focusing on when you're talking about the reasonable inference as to whether the employee beaten in this case. She had a pre-existing sexual relationship with this co-worker. That's all well and good. But it's who took the money goes to the motive for the assault. I believe those are actually two questions. And those are two inferences that need to be made. One is who took the money? And if we assume that it was, in fact, the co-worker who took the money, the question becomes, was this a crime of opportunity after he beat the employee as a result of their non-work-related sexual relationship? Or is this, in fact, something that was planned in advance such that the assault itself was part and parcel to a plan to take the money? I think you phrased the issue perfectly, but I also think it undercuts your argument. Because that's something for the trier effect to decide. There's inferences to be drawn. When you say the facts are undisputed, you seem to be suggesting to us that all parties agree exactly what happened. Obviously, all parties do not agree what happened, particularly with regard to the money. Well, I believe that there's a difference between the parties agreeing to the testimony and the evidence as to what occurred on that day versus inferences that are made based on the circumstances. They don't agree what happened that day. Didn't the assailant testify he never took the money? The assailant indicated that he didn't take the money, correct. And that's part and parcel, as my learned colleague suggested, is the motivation for this attack is relevant. Because obviously, as you know under the law, if it's purely personal and has nothing to do with work-related issues, then it would perhaps not be compensable. Obviously, the money and what happened to it is a key critical part of this consideration, is it not? Correct. But I believe that even if you take into account the fact that the co-worker took the money, the commission never makes a determination that the reason for the beating was in order to effectuate the taking of the money. And there's a difference between that's the inference, that's the relevant inference that we're talking about here, and that's the relevant question that we're talking about. The commission never even makes that determination. In summary, why did he beat her then? He beat her over an argument over sex. They had a pre-existing sexual relationship. The co-worker indicated that the employee called him to come to the store on that day and that that was their signal that they would have a sexual relationship that day. So the evidence is they walk out to the car together. She's got the money bag. He helps her compile, you know, get things ready for the deposit. She walks out to him. There's nothing that suggests in the evidence that there's any altercation going on at that time. According to the testimony, I don't know if you're disputing it, she had a problem with her tire. And she's kneeling down to look at the tire. He starts to get beat by the assailant. And this is over sex. Well, what's going on? Nothing that preceded this thing. The indication from the employee is that she has almost no recollection of what led up to the beating. If you look at the DVD interview and you look at her testimony, she clearly indicates not that she was bending over, but that she was on her way back to take a pub cap and she just does not remember what occurred after that. In your presentation, the arbitrator did make a finding. The arbitrator made the finding that the commission adopted. The arbitrator said, as in other workers' compensation cases, the petitioner in this case must establish an employer employment that places her at greater risk than the general public. In this case, the arbitrator finds that the petitioner's work did place her at greater risk than the general public for the following reason. One, the arbitrator finds that more likely than not, that one of the factors for the assault on the petitioner was Mr. Mosley's intent to rob the petitioner of the respondent's daily deposits. That was the intent for the assault. Now, you claim that the only evidence in the record was the intent of the assault was some sexual arrangement that these two had. That's not what the arbitrator found. And wasn't it for him to make the inference, to draw the inference? Well, the question becomes whether it's a reasonable inference. In the face of direct evidence rather than circumstantial evidence, that the reason for the assault was over a dispute over sex. What's the direct evidence? The police report, which indicates that Mr. Mosley admitted to the beating and then subsequently indicated that the sexual relationship, they had an argument over sex, they started to strike each other, and then he eventually lost control and beat her. And the other evidence is she had money before the assault and there was no money after the assault. And so one can draw the inference there, I suppose, that part of the reason was she was robbed. Why would you make any – you're crediting the statement of Mr. Mosley and admitted battery, severe battery, aggravated battery, right? Higher iron? Saying, no, the reason I did that was because she said no. Now, how many crimes could he have been charged with? Well, he was charged with attempted murder. And? And armed robbery. So, of course, what was he going to say? I mean, I guess I'm saying, again, a finder of fact, say, this fellow doesn't have the credibility. But the finder of fact in this case did find that the assault may have been, in part, motivated by personal reasons. So clearly the arbitrator is crediting the evidence that came in as something that is reasonable for him to rely on. Well, let's ask you this. What about if it's motivated by both? Sexual assault component and an opportunity to take money. Where does that leave the case? If it's motivated, if you can find a non – if it is not purely personal, there's no question that it is a compensable accident. Is there not a significant part here on this record, I think a very critical part or circumstantial evidence we haven't touched on? As I recall, didn't the assailant quit his job right after this assault? His job with McDonald's? Yes. Yes. Okay. Doesn't that bear on whether or not he had some money, he took the money back? Wasn't it that same night that he quit? Correct. So looking at this objectively, the victim is beaten severely. After she's walking to the car, and the only person around is the assailant, of course, the money bag is in the car. He beats her to within an inch of her life, and he just decides to leave the money bag in plain view, walk away, and somebody else coincidentally just comes along and takes the money bag, by pure coincidence and happenstance, and he rushes to his job and he quits his job. Why does he quit his job? Well, in my mind, whether he took the money or didn't take the money, the real question is going to be why did he beat the employee. But even if that's the case, if he beats the employee and as a crime of opportunity says, I did leave her within an inch of her life, I lost control, I'm now going to take the money, I'm going to try to create some sort of an alibi and then get out of town. Now, is that a reasonable inference to make? It's certainly a reasonable inference to make in my mind. Is it possible? It's possible, and that's why when I look at this case, the question becomes what's possible and what's probable, and the question becomes with the undisputed evidence we have in the record, what is possible versus probable? And it's just not probable necessarily that he, assuming he took the money, that he beat her in order to effectuate the taking. He had the money in his hands earlier that day in the Dollar Tree. He had it in his hands. All he had to do was walk away. He had it in his hands. Well, maybe he needed an opportunity. Somebody, you know, being distracted by the condition of their tire is a little different than somebody standing up at a store, and who knows, you know, presumably people at some point will come in and out of the store until they're closed. Well, this is a tire worker. And a head during business hours. But you seem to be hanging your hat on what I would consider to be sort of the slender reed in convincing us that the facts, as you are alleging, are undisputed. I don't know that we're going to find the facts are, quote, unquote, undisputed here up and down the line, but that's your argument. But even if it's manifest, wait, the question becomes, is there a reasonable inference that was made here? And what's possible versus what's probable? And to just say in the face of the evidence that suggests that this was a beating that was a crime of passion, he didn't just hit her over the head. He beat her within an inch of her life. Clearly, this was more than just hitting someone over the head and taking the money. What I'm trying to say is that when you look at this and you determine that a beating took place and then the money is missing, the fact that the money is missing, one possible conclusion is that the beating itself was part and parcel to trying to get the money. Another possible conclusion is it was getaway money. Is it probable? I don't think on these facts you can determine that it's probable. And based on that, I would assert that the commission's decision needs to be overturned. Real quickly as to the second portion of our argument relative to the treatment, assuming that it's a compensable accident, it's the employer's position that the specific treatment that was being authorized by the commission was actually too specific. In other words, they said that based on the testimony of the doctor, the employee should go to Florida at a treatment facility. The doctor was questioned regarding whether she knew of a facility here in Illinois that in all likelihood would be cheaper, and she was unaware, but she had not really investigated that. And while I think the commission can authorize specific modalities and those that are recommended by that doctor, to just say that it's limited to that treatment facility in Florida, I think begs the question of whether there are other treatment facilities that are less expensive for the employer here in the state of Illinois. Would you agree that the commission's decision on that issue, however, is the manifest way of the evidence standard? Would you concede on that point? Yes, I would concede. Thank you. Thank you, counsel. Counsel, please. Good morning. May it please the court and may it please the committee. I'm Jean Swee and I represent Jody Skinetsky. I think that you folks and I agree that the correct burden here is that it must be manifest way, the finding must be against the manifest way of the evidence in order for you folks to reverse it. At arbitration, Ms. Skinetsky proved that her employment placed her at greater risk than the general public. The arbitrator found an opinion in her favor for that. I think we all agree that in order for an assault to be compensable in the workplace, it has to have some risk associated with the employment. And in this case, surely it did. Arbitrator Falcioni, as you pointed out, the court pointed out that it was more likely than not that the assault occurred because of the employment. If we look at what the arbitrator relied on Detective McCluskey's testimony and that also supported the claimant's testimony. What the claimant said was that Mr. Mosley was the one who beat her. The arbitrator thought that whomever beat Ms. Skinetsky likely took the money. I think that's an obvious conclusion. Whoever beat her bothered to beat her actually took the money. The commission by all of the commissioners affirmed the arbitrator's decision. The circuit court with Judge Prawl affirmed it saying that that was not against the manifest way of the evidence. Did Ms. Skinetsky's job as an assistant manager for Dollar Tree store place her at greater risk than the general public? And then, in contrast, did Mr. Mosley rob her? As an assistant manager, Ms. Skinetsky followed a regular pattern. She closed the Dollar Tree every night around the same time at 9 p.m. She counted her money every day. She said that normally the money was between $3,000 and $7,000 in cash at the time of the closing. She used her own car. She would make the nightly deposit. She used her own car to drive to the bank to make the money drop. Ms. Skinetsky said she was on the time clock whenever that occurred. She was still being paid by her employer. On August 9th of 2005, Tim Mosley, who's also a co-worker, also employed by Dollar Tree store, arrived before closing. Mr. Mosley arrived and he dismissed the co-worker that she was working with, Miss Angela Muscle. He said to her, go ahead, go home, I'll help her close the store. Apparently, in the statement that Ms. Skinetsky gave to the police, this had happened many times before, the claimant testified that while they were counting the money, Mr. Mosley seemed agitated. She said that while she was counting the employer's money on August 9th, he took the money from her and he started counting it himself. And then, she said, after they finished, she filled out the deposit slip. She thought it was between $4,000 and $6,000 that evening. She placed the money in a money bag and she put the money bag in her purse. That is what she always did every night as part of her deal. She left the store about 9.30 p.m. She said it was dark outside. You've seen the parking lot exhibits the pictures where her car was parked. That's exactly where they found her car, at least after they started the investigation. There were not other cars in the lot. It was dark. All the other stores in the strip mall were closed. As they approached the car, Mr. Mosley points out, oh, you've got a flat tire. And he goes over and puts his finger in the tire. The claimant asked Mr. Mosley, at that point, she was concerned still about making her nightly deposit. She said, will you drive me to the bank so I can make my nightly deposit? He says no. She puts her money bag in the purse in the front seat of the passenger's car. She closes the door and she locked it. And that's in her testimony on page C-68. She says she kneels down to change the tire. And as she did, she gets struck. She remembers being beaten to some degree. She remembers Mr. Mosley, and she was very clear it was him, places her in the back seat of the car. He shuts the door. And she said as soon as she heard the back door shut, she heard the front door open on the passenger's side. She heard the sound of rattling change as the money bag was taken. The police arrived. And guess what? The only door open in that car was the front passenger door. And that's in the police report. Somehow she manages to climb out of the back seat of the car. She starts dragging herself across the parking lot. She dragged herself over 40 feet. The people who found her were going to work at Outback Steakhouse, and they were cleaners. I want to get you to an issue in this case. Yes. I know it's past me. Can there be more than one reasonable inference from a given set of facts? Well, I think you probably could come up with more than one reasonable inference, but I don't think very easily. But is it possible? Well, sure it's possible. So you could have more than one inference on a given set of facts that is more likely true than not true? Yes, Judge, and that's where it comes down to a matter of probability. But if you have multiple inferences from a given set of facts, both of which are more likely true than not true, does either actually exist within the realm of probability, or do they both exist within the realm of possibility? Judge, if you're asking me do I think it was by preponderance of the evidence that Mr. Mosley took the money. No, no, I'm asking a theoretical question. Okay. I'm more interested in the theoretical base. If you have two inferences that you contend are reasonable from the same given set of facts, can it be said that they are both more likely true than not true at the same time? Can they occupy the same time and space? Or if they are both reasonable, are they then relegated to a position of mere possibility as opposed to probability? I don't think I did very good at philosophy, Judge. Well, I mean, it goes to the base because he has cited the statement in First Cash. First Cash is not an original statement. The statement comes from a case called Consolino v. Thompson, which in turn comes from an article from a professor by the name of Fleming James. And Fleming James' position always was that you can only have one inference from a given set of facts that exists within the realm of probability. Because if the facts that you have equally support an inference other than the one you attempt to draw, then the two of them can only exist within the realm of possibility. And possibility does not support an inference for purposes of decision-making because it's rendered conjecture. So I suppose my question is, it is theoretical. Can you have more than one reasonable inference? Because we say that if from a given set of facts more than one reasonable inference can be drawn, then it's for the commission to decide and it's a manifest way to question. And I'm wondering if we're right when we make that statement, that you could have more than one reasonable inference from a given set of facts. I don't know how that can be. How do they occupy the same time and space? Well, the answer perhaps may be that there's a probability. The hypothetical pose to you is that there is no probability of one being true as opposed to the other one being true. So they cancel each other out. They're neutral. And in that point, that professor is saying no decision can be rendered that would establish reality. So your argument would be, why is it more probable? Not just possible, because both inferences are possible. But why is your position more probable? Or that there can be something there to establish that it's more probable? Well, let me say that as a practitioner, we often rely on our people who help us, who help patrol the state of Illinois. And in this case, the Bloomington police officers did a rather exhaustive investigation. And what they did after they did that exhaustive investigation was charge him with assault. And they charged him with robbery. We've got eye-holding detective McCluskey who did a rather extensive interviewing process of both the claimant. He looked at all of the other records. And what he said after he did this was, I think, I mean, he said this on page C81. He said, we charged Mr. Mosley with robbery because after the interviews with him and the others, we concluded that the evidence indicated that he did commit the robbery. Now, let's assume for a moment he did commit the robbery. And let's make the theoretical even simpler. One employee assaults another employee. And during the course of the assault, and the assault because he intends to beat the other employee, he finds a piece of property on the victim and he decides to steal it. If the motive for the assault was not the stealing of the property, which turned out to be the employer's property, then in that particular case you probably don't have a compensable occurrence. But he did steal it, so he's going to be charged with robbery. So now the question becomes, did this man assault because he wanted to rob, or did he rob as a matter of convenience after he committed the assault he intended? Judge, I think you have the right to look at the circumstantial evidence, as did the police. Circumstantial evidence is he brings tools to assault her to the site. He brought pliers. No question he intended to assault her. The question is, why did he intend to assault her? Because he dismissed the co-worker and said, let me help you count the money. And he got agitated when they were counting the money. He wanted the money. He also may have been agitated that there's a pattern there of meeting for a rendezvous, too. Two times, Judge. Three times, okay. Two times I don't think is a pattern. But this is clearly, it could be a part of why he was agitated, certainly, but so was the money. He's counting $4,000 to $6,000 in cash and he wants it. Obviously, what caused him to show up at the store in the first place? Was he called by her or did he show up on his own? You know, I don't think she said for sure, and I'm not sure what he said. That could become a significant issue. What's that? How he got there could be, you know, bear on the analysis. Well, what she did say to the police was that he had done this several times before. He had showed up and dismissed the co-worker, and that is in that statement. So we know if it's two times and if that happens to be accurate, then there's something more to why he showed up and counted the money. If he assaults after he robs, you can't draw the conclusion that he assaulted because he was robbing. Why did she ask him to take her to the bank? What was that again? Post hoc ergo proctum. After this, therefore, because of this. But if you want to say post hoc, then it would be ecclesiastical. But, Judge, why did she say take me to make my nightly deposit? I mean, if he was really so about this assault, why didn't he say, okay, I'll get you out in the dark and then I'll assault you? Well, that's an interesting question. So it has to be something more than he just robbed her. There has to be something more. Yes. I mean, he comes to count $4,000 to $6,000 worth. Actually, I hadn't thought about that, by the way, with the McDonald's thing. Why did he quit his job? Yeah. You know, why did he quit his job? That's a logical fallacy. But he does, I don't know why I hadn't thought about that. But he does count the money and he does get agitated and he's got the tools in the car and he comes over knowing that they're going to close that store and it's 9.30 at night. And by the way, I mean, I had originally thought 9.30 p.m., it's dark, there's nobody in the parking lot. All those things, I think, place her at greater risk than the general public. I mean, she's carrying cash on her being. I mean, she has a pattern of doing this. I mean, all those things place her at greater risk. Getting back to the threshold philosophical question, but I think you could probably concede that even if the evidence would allow for two equally reasonable inferences, you would not, even if you conceded that, you would not necessarily lose your case. According to Fleming James, you would. Well, that's going to kind of change everything. Otherwise, what's going to happen to the poor guy just behind us with epicondylitis? You can make two reasonable inferences. Where does all that go? Well, there has to be. One of them exists within the realm of probability because a fact finder has found that the facts render this inference more likely true than not true, but this inference only possible. And therefore, it's this inference that he draws. Now, the question becomes who has the right to make that and what is our standard of review? And it occurs to me that the commission has the right to make it and the standard of review is manifest way. And so get out of this conundrum. What does the arbitrator find that would establish more probability towards the inference that the assault was motivated by the coworker for robbing him? It's what he said. It's what the arbitrator said. Right. He read. The arbitrator said that one of the reasons for the assault on the claimant was to rob her of her nightly deposit. One of the reasons. I mean, I think he's leaving it completely open to, you know, the possibility that there's more than one reason. What he found was that it's more likely than not that one of the factors for the assault on the petitioner was his intent to rob her of the respondent's money. Right. Thank you. Thank you. Rebuttal, please. Just a few factual questions. Can you answer the philosophical parts of it? I'm sorry? Can you respond to those philosophical maxims? I believe that when you have two things that are entirely possible, that the employee hasn't met their burden. It's possible that the assault was motivated by a desire to take the nightly deposits, and certainly you can take the same circumstantial evidence that's there to support that as there is to support a finding that the beating was as a result of their rendezvous. Well, let's turn it around a little bit. I don't want to get too deep into philosophy, but you raise another question. As you know, the standard here, I believe, is not to know what's manifest weight of the evidence. Another way of phrasing that is conclusion opposite to the one the commission drew would clearly have to be apparent. So if you have two equally competing arguments or possibilities, how do we then decide, if they're equal, that the commission's decision, another opinion or another decision was clearly apparent? How do you answer your own argument? I think when you have two possibilities like that, it's apparent that the employee hasn't met their burden of proving that one of those is more likely than the other. What if the commission finds that one of those is more likely? The question I have in that regard is what has the commission found in their findings that shows that the likelihood that the employee was beaten was in order to obtain the cash? Well, as Justice Hoffman, that's what the arbitrator found. We know that the employee was beaten. We know the cash was taken. And there's certainly a list of items that the arbitrator lists to establish that the money was taken. All that circumstantial evidence in the arbitrator's mind established that the money was taken. But I didn't see something in there that established that the reason for the beating was to effectuate the taking of the money, because you can take the same facts all over and cobble it around to a different result. Well, is the arbitrator required to search out a series of different theories and elevate that to the status of an equal probability or possibility? Is that the arbitrator's job? Well, the arbitrator determined that more probably than not, this occurred. And I don't know that he determined that the facts established more probably than not that the beating was a result of the desire to take the money. But who decides what the facts establish? The arbitrator decided. The question becomes then, the fact that the arbitrator says it's more probable than not, it's against the manifest way to the evidence when you have two competing theories that are just as likely. It's not more probable than not. Two competing theories means an opposite conclusion is clearly apparent. That's correct. That's the philosophical problem. Would it have been better had the facts established he quit McDonald's before he went to meet this lady? Would they have been better? Yes, for you, or worse for you? I think they would have been worse for me, because I think then, you know, when I talk, at least in my mind, when I looked at the McDonald's situation, I thought, oh, quick way to establish an alibi, you know, that he was somewhere else in his own twisted mind, and then he's out the door. If he had quit beforehand, it might have, in my mind, under the same theory, have been, oh, I'm going to be out the door any second now, because I'm going to go rob someone. Does that make sense? Well, it gets you out of the post-military brokerable fallacy. Okay. Post-military brokerable. Just a couple of quick factual. Which basically is worse for you. It's worse for me. Yes, if that, if he quit before. Correct. Because it's more reasonable, more probable that the assault was planned due to. And that would be some sort of a circumstantial, something circumstantial in the record that you could at least say, ah, this is why I determined that the assault occurred as a result, because of the desire to take the money. Thank you. Thank you, counsel. The clerk will take the matters under advisory.